(37 App. Div. 450.)

HEAVENRICH v. HEAVENRICH et al.

(Supreme Court, Appellate Division, First Department. February 10, 1899.)

1. HUSBAND AS WIFE'S AGENT.
    That a member of a firm managed the details of an account of his wife with the firm, so far as having it opened and seeing that sums were properly credited to it, and in one instance withdrew money from it with her consent, to pay his indebtedness, does not show that he was her agent, authorized to take the balance of the money due her by the firm, and apply it to his indebtedness to the firm.

2. PARTNERSHIP—WITHDRAWAL OF MONEY BY PARTNER.
    A firm cannot, in an action against it by the wife of one of the partners, for money withdrawn from it by her husband, and given to her, and by her loaned to the firm, avail itself of the defense that, when the money was withdrawn, the husband was indebted to the firm for part of his capital; there having been no fraud in the transaction, but it having been with the knowledge and without objection of the firm.

Appeal from trial term, New York county.

Action by Rosa Heavenrich against Julius Heavenrich and others. From a judgment on a verdict directed for plaintiff, defendants appeal. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Maurice Sichel, for appellants.

A. Blumenstiel, for respondent.

O'BRIEN, J. The plaintiff is the wife of Julius Heavenrich, one of the defendants, and brought this action to recover the sum of $2,344.18, with interest, for money loaned by her to the firm of Heavenrich, Trounstine & Co., which has been dissolved. The evidence shows that about the 18th of August, 1891, the plaintiff's husband, who was a member of the firm, gave to the firm's bookkeeper a sum of money, and requested him to open an account in her favor, and thereafter deposited further sums to her credit, until she had, on January 2, 1893, the sum of $3,550 in that account. On that date the firm made a promissory note to the plaintiff's order for the amount, and gave it to the husband, who delivered it to her. After the note was given, the husband continued to make deposits in the wife's account until July 22, 1893, at which time he brought the note to the firm, and requested that a personal debt of his, amounting to $2,500, should be paid by the firm, and deducted from the note. This was done by means of a check for $2,500, the payment being indorsed on the note. The plaintiff testified that this transaction was with her consent. She personally had nothing to do with the account, her husband attending to the details. On October 31, 1894, more than a year before the dissolution of the firm, the amount still standing to the plaintiff's credit was applied by her husband to pay his indebtedness to the firm, and her account was charged with such payment. The plaintiff did not know of this transfer until long afterwards, and it is not shown or claimed that it was done with her express consent or authority.

At the close of the case, the defendants moved to dismiss the complaint, and the plaintiff moved for the direction of a verdict, which latter motion was granted. The exception taken to such direction, and other exceptions made to rulings upon evidence, give rise to the questions presented upon this appeal. These may be readily reduced to two fundamental questions: First, whether, without any evidence of express authority, an implied authority was given to the husband to transfer for his own benefit the amount to the credit of his wife on the books of the firm; and, secondly, whether it was competent to introduce the evidence excluded, tending to show that moneys placed to the plaintiff's credit were sums taken by the husband from the firm at times when his account with the partnership was overdrawn, and his capital less than that of his co-partners.

Considering these questions in their order, we fail to find any facts from which the inference may fairly be drawn that the husband was the wife's agent in the transactions resulting in the transfer of the money due her from the firm. It is true that he managed the details

of the account so far as having it opened and seeing that the sums were properly credited; and, in the one instance referred to, he withdrew $2,500 with her consent, to pay his indebtedness. These circumstances, however, are not sufficient to justify the inference that he was her agent, authorized to take the balance of her money, and apply it to his own indebtedness to the firm. Had the firm paid the amount to him in discharge of its indebtedness to the plaintiff, a different question would be presented.

It is alleged in the answer that the reason for the transfer was that the husband's capital account was a great deal smaller than that of the other partners, although the contract of partnership provided that each partner should have an equal investment, and that the other defendants at the time of the transfer insisted that, unless the husband made his capital investment equal to theirs, the partnership would be dissolved. The first part of this defense was sought to be proved; but there was no effort or offer made to prove, nor was there any evidence in the case tending to show, that the transfer resulted from a threat or intimation that, unless the capital account was made good, the firm would be dissolved. What does appear is that Mr. Heavenrich was under an obligation to pay to the firm a certain sum, namely, the difference between his capital and that invested by his partners, and that at their request he made up the difference, transferring the amount to the credit of his wife to his own account with the firm. It may be seen, therefore, that this is not a case where implied authority or agency is to be presumed in favor of one who, dealing with a person having some apparent authority, parts with something of value upon the faith thereof; and the circumstances do not establish an agency extensive enough to justify the inference that the husband was authorized to pay his own indebtedness with the wife's money. Nor can we spell out from the evidence any authority, express or implied, which would entitle him, even if he were her agent, to receive anything else except money in payment of the firm's indebtedness to her.

Coming to the second question, with regard to the evidence rejected, but offered as tending to show that moneys credited to the plaintiff were really sums taken by the husband from the firm, and deposited to her credit, we think the ruling made excluding such evidence was right. The defendants did not claim, nor did they allege by way of defense, that the moneys withdrawn by the husband, and handed to his wife, and subsequently deposited to her credit in the account, were taken fraudulently, or without the knowledge or consent of the other partners. In these respects the present case differs from the one relied upon by the appellants (Holmes v. Gilman, 138 N. Y. 369, 34 N. E. 205), where it appeared that the partner of a firm fraudulently overdrew his account, and, with part of the moneys thus wrongfully appropriated, together with money of his own, paid premiums on life insurance policies which were made payable to his wife. In that case, suit being brought by the firm to recover the proceeds of the policies, the court held that money so taken from the firm was in the nature of trust money and, together

with the money accumulations resulting from investment, could be recovered by the firm. If the answer here had alleged that the husband had taken moneys in fraud of his partners, then the evidence excluded might have been competent; and, if it were shown that the moneys were so taken and placed to the wife's credit on the books of the firm, such facts would have constituted a complete bar. The moneys were taken by the husband, however, with knowledge and without objection by the firm; and the account which was opened by the firm with the plaintiff was made up of money received by the husband from the firm, and given to his wife, and deposited by her, together with other money consisting of her savings. This account was recognized as an existing liability, interest being allowed and credited thereon in the firm's books, down to the time when it was used to pay the husband's indebtedness to the firm. It would seem to be a little late to assail the account or the plaintiff's title thereto, or to permit the firm when called upon for payment, and then only, to insist that they had the right as against her to go into a partnership accounting for the purpose of showing that some or all of the moneys credited to her were withdrawn from the firm by the husband at a time when his capital was not equal to that of his co-partners.

If, instead of depositing these moneys with the firm, the plaintiff had had her husband place them in a savings bank, could the firm (having assented, because not objecting, to the withdrawals by the husband) have maintained an action against her for such moneys, or claimed the deposits in the savings bank, upon the theory that it would be found by a partnership accounting that, when the husband was permitted to take the moneys, he should not have done so because his capital account was overdrawn? The statement of such a claim carries with it its own answer. And yet there is no distinction in principle between this account opened with the firm and an account opened with the same money deposited in a bank. The trial justice was right in holding that he could not thus go into a partnership accounting of the defendant firm for the purpose of determining whether or not, when the husband withdrew money therefrom, his capital was not equal to that of the other partners, and so ascertain how much of the wife's credit with the firm consisted of such withdrawals. Such an accounting might be perfectly proper as between partners. But can the defense so sought to be proved be available in the absence of additional allegations or proof that such moneys were withdrawn secretly, fraudulently, or wrongfully? We think not.

With this subject eliminated, all that remained at the close of the testimony was whether or not the defendants had shown that the husband, in making the transfer in payment of his own indebtedness, was the agent of the wife. We have already commented on the extent of the proof upon this question, and, as said, at the end of the case the defendants insisted that they were entitled to a dismissal of the complaint, and the plaintiff that she was entitled to the direction of a verdict. The defendants did not ask to go to the

jury on this question, and with the disposition made in directing the verdict we do not think we should interfere.

The judgment should therefore be affirmed, with costs. All concur.